EVANETTA HARE, Respondent, *v.* NEW YORK TELEPHONE COMPANY, Appellant.*

(County Court, Rensselaer County, April, 1917.)

Telephone companies — contracts — provisions of — when customer not entitled to restoration of service.

A provision of a contract for a telephone service that the rate specified is payable in advance in equal monthly installments remains in force if the service is continued beyond the term of the contract.

Where a contract is " for a term beginning with the establishment of service and ending one year from the first day of

---

* Judgment unanimously affirmed by the Appellate Division, Third Department, November 17, 1917.—[REPR.

the following month and thereafter until terminated by ten days' notice in writing by either party to the other," and upon non-payment of the monthly rental in advance the telephone company discontinues its service and removes its apparatus, the customer is not entitled to a restoration of the service unless a new contract is made.

APPEAL from a judgment of the City Court of Troy, rendered in favor of plaintiff.

John A. Delehanty, for New York Telephone Company, appellant.

James Farrell, for Evanetta Hare, respondent.

RUSSELL, J.    This is an appeal from a judgment entered in the above entitled action in the City Court of Troy, N. Y., on the 15th day of January, 1917, against the defendant for the sum of $150 and costs.

This action was brought for the recovery of damages from the defendant for failing to furnish telephone service to the plaintiff and for removing its telephone apparatus from the residence of the plaintiff.

On July 26, 1916, the defendant, claiming that there was due to it from the plaintiff the sum of two dollars for rent and thirty-six cents for tolls, discontinued the telephone service from the plaintiff's residence.   On or about August 15, 1916, the defendant removed its telephone apparatus from the residence of the plaintiff, although the plaintiff offered to pay the sum of one dollar and seventy-one cents on account of the amount due for telephone rental from July 1, 1916, to July 26, 1916, besides thirty-six cents for tolls on or about August 7, 1916.   The plaintiff refused to sign a new contract for the restoration of the service, claiming that she had not broken the contract and wanted no other contract.

The contract in part reads as follows:  " The subscriber hereby requests the New York Telephone Com-

pany to furnish at her residence, 29 Eighth street, Troy, N. Y., the telephone facilities and amount of local service in connection therewith described in 'A' on the reverse thereof, for a term beginning with the establishment of service and ending one year from the first day of the following month, and thereafter until terminated by ten days' notice in writing by either party to the other *  *  *.''

Under terms and conditions No. 1, the contract reads as follows: '' During the term beginning with the establishment of service and ending one year from the 1st day of the following month (a) for the telephone facilities and service specified in 'A' on the reverse hereof at the rates specified thereunder payable in equal installments monthly in advance and *pro rata* for any fractional service *  *  *.''

In construing this contract and in arriving at the intent and understanding of the parties thereto, it is essential to construe the contract as a whole. It is a contract entered into between the telephone company and many thousands of people. The company has exercised its power to print terms of the contract and this printed contract has been accepted generally by the people who use the service of its telephone. It is generally understood by all parties to this contract to continue the terms under which the telephone was installed. To say that after the first year's service had expired, and the continuance of the service was enjoyed without any different terms being entered into, that the parties were then bound by different terms and that the telephone company must resort to proceedings in court in each and every instance where a party had changed his mind, would be obstructive law.

After the expiration of the first year's service the plaintiff evidently continued payment in advance as appears by the evidence. The evidence of the plain-

tiff was in part as follows: " Q. Did you pay monthly rental for the month of June? A. Yes, sir. Q. 1916? A. Yes, sir. Q. During what month? A. June, of course. Q. For the month of May did you pay that? A. Yes. Q. During what month? A. May, I presume. Q. Don't you know? A. Yes, I am quite certain it was May. Q. How about April, 1916? A. I think I have always paid my bills during the month they were due. Q. During the month they were due, meaning in advance, before the month expired? A. Yes."

It would seem by the foregoing evidence what the plaintiff understood to be the terms of the contract.

It seems to me that the proper construction to give to this contract with respect to the period of time in which the rate specified is payable in equal installments monthly in advance is embraced within the words " for the term beginning with establishment of service and ending one year from the first day of the following month and thereafter until terminated by ten days' notice in writing by either party to the other."

To exact payment in advance is only a reasonable exercise of the power vested within the province of the company. *Southwestern Tel. Co.* v. *Danaher,* 238 U. S. 482.

Mr. Justice Van Devanter, in delivering his opinion in this case, said: " It also was strongly supported in reason, for not only are telephone rates fixed and regulated in the expectation that they will be paid, but the company's ability properly to serve the public largely depends upon their prompt payment. They usually are only a few dollars per month and the expense incident to collecting them by legal process would be almost prohibitive. It uniformly is held that a regulation requiring payment in advance, or a fair deposit to secure payment, is reasonable, and this is recognized in the brief for the plaintiff where it is said

that to protect themselves against loss telephone companies ' can demand payment in advance.' "

But even if we assume that the written contract which provided that the payment of the rate specified should be made in equal installments monthly in advance was in force only for the term of one year, nevertheless I am of the opinion if the telephone service was continued longer than a year, and if there was no cessation of service at the end of the year, that the parties continued under an implied contract, the terms of which were based upon and understood to be by the parties the same as those of the written contract. It is only reasonable to say that inasmuch as the relations of both parties continued in all respects exactly as if the first year had not expired, that the continuance of service and use of the service were merely an enlargement of the term. *Adams* v. *Fitzpatrick,* 125 N. Y. 124; *Baylies* v. *Ingram,* 84 App. Div. 360; *Wallace* v. *Devlin,* 36 Hun, 275.

Having decided this point it naturally follows that the telephone company had the right to discontinue its service from plaintiff's residence and also remove its telephone apparatus provided the plaintiff would not sign a new contract. When the plaintiff did not pay the monthly rental in advance for the service, the plaintiff broke the contract. The defendant then had the right to discontinue its service and recover upon a *quantum meruit* for the services rendered the plaintiff.

See order of Mr. Justice Howard, not yet reported, denying a motion for an order enjoining and restraining the defendant from continuing to violate its contract and requiring the defendant to furnish telephone service at her residence in accordance with the terms of said contract.

Judgment reversed.