THE METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO,
Plaintiff-Appellee, *v.* ON-COR FROZEN FOODS, INC.,
Defendant-Appellant.

First District (5th Division) No. 62212

Opinion filed February 13, 1976.

Marshall & Marshall, of Chicago (Maurice G. Shanberg, of counsel), for appellant.

Allen S. Lavin, of Chicago (Frederick M. Feldman and Ina S. Winston, of counsel), for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Plaintiff brought this action to recover penalties and interest in the amount of $9,294 from defendant for violation of its Industrial Waste Surcharge Ordinance. Defendant is in the business of operating a food processing plant in Chicago. The complaint alleged that defendant was liable for such penalties and interest because it had failed to remit payment for treatment of its industrial wastes within the time limits prescribed by the ordinance. In a verified answer defendant denied any liability and alleged that (1) plaintiff did not have the power to enact the penalty provisions of the ordinance, (2) the penalty provisions did not apply because defendant had filed the statements and remitted payment, albeit in an untimely manner and (3) the penalty and interest provisions of the ordinance are so excessive as to be unreasonable. Plaintiff moved for summary judgment which was granted by the court in the amount of $9,200.94.[1] The grounds which are the basis of defendant's appeal are those which it raised in its verified answer.

The statutes of this state allow industrial concerns to discharge refuse in excess of 3,650,000 gallons a year into plaintiff's sewers and works only upon compliance with such reasonable terms and conditions as plaintiff is empowered to make. These terms and conditions may include "a requirement for the payment of compensation to [plaintiff] for the conveying, pumping, treatment and disposal of such excess." See Ill. Rev. Stat. 1973, ch. 42, par. 326a(a) and (b).[2]

---

[1] We note that the complaint alleged that defendant was liable for penalties and interest in the amount of *$9,294.00.* A bill prepared by plaintiff itemizing the amount of penalty and interest owed by defendant on a month to month basis totaled *$9,200.94.* Plaintiff's motion for a summary judgment prayed for relief in the lesser sum and judgment was granted in this amount.

[2] Ill. Rev. Stat. 1973, ch. 42, par. 326a, provides in pertinent part:

"(a) It shall be unlawful, except as herein provided, for any person, firm, association or corporation in possession of or controlling and operating any industrial or manufacturing plant to discharge into the sewers or works of the Sanitary District or into any sewer connected therewith, any waste matter of any nature whatever resulting from or the residue of any industrial or manufacturing operation or process carried on in such plant, where the mixture of such waste matter, sewage and water discharged by such industrial or manufacturing plant into such sewers or works equals in any twelve-month period an aggregate volume of three million, six hundred fifty thousand (3,650,000) gallons. Upon the trial of any issue as to whether any person, firm, association or corporation in possession of or controlling and operating any industrial or manufacturing plant shall come within the provisions of this act or of any ordinance passed pursuant to the power herein conferred, proof that an aggregate volume of ten thousand (10,000) gallons daily of the nature herein

On December 10, 1970, pursuant to this statutory grant of authority, plaintiff adopted the Industrial Waste Surcharge Ordinance for the purpose of making "reasonable charge for the cost of handling and treating industrial wastes in excess of 3,650,000 gallons in any 12 month period from an industrial plant. * * *" (Metropolitan Sanitary District of Greater Chicago, Industrial Waste Surcharge Ordinance, Section 1, December 10, 1970.) The ordinance imposes a duty on industrial plants subject to the surcharge to install sampling chambers equipped with standardized monitoring equipment. The owners of such plants are required to submit monthly to plaintiff certified statements detailing the quantities of industrial wastes it discharges into plaintiff's sewers and works "not later than the last day of the following month." (Industrial Waste Surcharge Ordinance, Section 5.) Together with this certified statement, owners of industrial plants are required to remit the amount of surcharge due. Section 7 of the ordinance provides procedures to be utilized in the event of irregularities are found in an owner's statement:

"(b) *Payments:*

The owner of each industrial plant subject to surcharge shall remit monthly to the Sanitary District, the amount of the surcharge due together with its certified statement.

Should inspection by the Sanitary District reveal that any statement filed by an owner does not accurately represent actual conditions, the Sanitary District shall redetermine the surcharge due and bill the owner for any deficiency together with interest as herein provided. Said bill shall be paid within ten (10) days after receipt thereof by the owner.

(c) *Interest:*

Interest, at the rate of one percent per month or any fraction thereof, shall be added to any overdue surcharge payments. Such

---

set forth has been discharged into such sewers or works from such plant for any ten (10) days during a twelve-month period shall be prima facie evidence in all courts and places that there has been discharged an aggregate volume of three million, six hundred fifty thousand (3,650,000) gallons of the nature herein set forth, during such twelve-month period.

(b) The Sanitary District, in addition to the other powers vested in it, is hereby empowered in the interest of public health and safety, to permit the discharge into the sewers and works of the Sanitary District and into sewers connecting therewith from any industrial or manufacturing plant, a mixture of waste matter, sewage and water as described in paragraph (a) hereof, in excess of an aggregate volume of three million, six hundred fifty thousand (3,650,000) gallons in any twelve-month period, upon reasonable terms and conditions, including a requirement for the payment of compensation to the Sanitary District for the conveying, pumping, treatment and disposal of such excess."

interest shall accrue and continue to accrue from the date the owner's remittance was due until all overdue surcharges and interest are paid."

Section 8 of the ordinance specifies penalties to be imposed in the event there is a failure by an owner subject to the surcharge to file its monthly statement:

"*Section 8. Penalties*

Should the owner of any industrial plant subject to surcharge fail to file its monthly certified statement as herein required, the Sanitary District will estimate the amount of the surcharge due and bill the owner for such overdue surcharge together with interest and penalties as provided herein. Said bill shall be paid within ten (10) days after receipt thereof by the owner.

The penalty for failure to file a monthly certified statement shall be five percent per month or any fraction thereof, of such unpaid· surcharge. Such penalty shall accrue for each month from the date any remittance was due, until paid. In addition to such penalty, interest shall also be assessed as provided under Section 7(c), except that no interest shall accrue on any unpaid penalty."

In the instant case defendant filed its monthly certified statements for the period from March 1, 1971, through December 31, 1973, on January 17, 1974, and remitted the sum of $8,088 as the amount of surcharge it owed. Plaintiff brought this action alleging that due to its ·late filing defendant owed in addition $9,200,94 in penalties and interest.

Opinion

It is defendant's initial contention that plaintiff was not granted the power by the enabling legislation (Ill. Rev. Stat. 1973, ch. 42, par. 326a) to provide for the imposition of penalties and therefore the penalty provisions of the Industrial Waste Surcharge Ordinance are invalid. Defendant's contention is grounded on the well established principle that plaintiff has only those powers granted it by enabling legislation. "[Plaintiff] derives its powers from the legislature, and can exercise only those that have been expressly delegated to it and such as are necessarily implied." (*Judge v. Bergman*, 258 Ill. 246, 251, 101 N.E. 574.) This principle, defendant argues, is clearly embodied in section 8 of article VII of the Constitution of 1970 which provides in pertinent part:

"Townships, school districts, special districts and units, designated by law as units of local government, which exercise limited governmental powers or powers in respect to limited governmental subjects shall have only powers granted by law." See *City of Des*

*Plaines v. Metropolitan Sanitary District,* 16 Ill. App. 3d 23, 305 N.E.2d 639, *rev'd on other grounds,* 59 Ill. 2d 29, 319 N.E.2d 9.

It is asserted that since section 7a of "An Act to create sanitary districts . * * *" (Ill. Rev. Stat. 1973, ch. 42, par. 326a) does not explicitly confer on plaintiff the power to impose a penalty on one who fails to file or makes a late filing of the monthly certified statement, the penalty provisions of the ordinance are unenforceable.

We agree that the focus of our analysis of this issue must be article VII, section 8, of the Constitution of 1970. The Constitutional Commentary to this section states that it "preserves the concept of Dillon's Rule" with respect to the enumerated governmental bodies. (Constitutional Commentary, Ill. Ann. Stat., art. VII, §8, at 85 (1971).) Dillon's Rule provides:

> "It is a general and undisputed proposition of law that *a municipal corporation possesses and can exercise the following powers, and no others:* First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the accomplishment of the declared objects and purposes of the corporation,—not simply convenient, but indispensable." (I Dillon, Municipal Corporations §237, at 448-449 (5th ed. 1955).

This position has traditionally been the rule in Illinois. Courts of this state have recognized for over 125 years that the express statutory power to adopt an ordinance carries with it the implicit authority to adopt penalties for the violation of such ordinance. (See, *e.g., City of Pekin v. Smelzel,* 21 Ill. 464; *Toledo, Peoria & Warsaw Ry. Co. v. Town of Chenoa,* 43 Ill. 209.) Furthermore, we note that the principle of Dillon's Rule has often been invoked in upholding the validity of ordinances adopted by plaintiff. See, *e.g., Judge v. Bergman; Zenith Radio Corp. v. Metropolitan Sanitary District,* 2 Ill. App. 3d 35, 275 N.E.2d 756.[3]

In the instant case plaintiff has claimed that without the penalty provisions its surcharge ordinance would be rendered meaningless. This argument is predicated on the clear intent of the ordinance and section 7a (par. 326a) to provide a regular and orderly method for plaintiff to recover the costs of processing excess effluent discharged by large in-

---

[3] We note that in *Chicago Allis Mfg. Co. v. Metropolitan Sanitary District,* 52 Ill. 2d 320, 288 N.E.2d 436, although the issue of whether plaintiff undertook an unauthorized assumption of power in enacting penalties was not raised, the Supreme Court upheld the validity of that portion of the ordinance imposing on industrial concerns the duty to install monitoring equipment even though no such requirement appears in section 7a (par. 326a).

dustrial users (*i.e.*, those who discharge wastes in excess of 3,650,000 gallons a year) at as little expense as possible to plaintiff compatible with fair and effective monitoring of such users.

Thus the ordinance is designed to be self-assessing, that is, it imposes a duty on industrial plants to monitor the discharge of their own refuse and compute the size of the surcharge which they must remit. If the plants do not monitor themselves, the expense of metering and analyzing their effluent must be borne by plaintiff. The penalty provisions of the ordinance supply a strong incentive for voluntary compliance thus eliminating the necessity of plaintiff monitoring the effluent discharged by each plant.

In addition, and more importantly, the ordinance prescribes a strict timetable for the remitting of the surcharge to assure that the payments for the cost of handling wastes in excess of 3,650,000 gallons a year accrue to plaintiff in an orderly fashion. Failure to remit surcharge payments or the remitting of these payments in an untimely fashion in violation of the ordinance would undermine any possibility of plaintiff matching revenues to its ongoing operational costs. Such uncertainty in its collections, caused by the failure of large users to comport with the terms of the ordinance, would undoubtedly work to the detriment of homeowners and small industrial users. The penalty provisions are necessary to encourage prompt payment of the surcharge and thus avoid this result.

■■ We believe it clear that the penalty provisions are essential to the accomplishment of the purposes of plaintiff and therefore conclude that the establishment of penalties by plaintiff for violation of its Industrial Waste Surcharge Ordinance was not an unauthorized and invalid assertion of power.

Defendant next contends that even if we were to uphold the validity of section 8 of the ordinance (the penalty provision), it is not indebted to plaintiff. Defendant asserts that section 8 applies only in instances where there is an absolute failure to file a certified monthly statement by an industrial plant subject to the surcharge. It is argued that, applying traditional rules of statutory construction, this provision, being penal in nature, must be strictly construed against plaintiff. (See 3 Sutherland on Statutory Construction §59.03, at 6-7 (4th ed. 1974); 6 McQuillin, Municipal Corporations §20.52, at 140-143 (rev. ed. 1969).) Defendant further argues that it did not fail to file its monthly certified statements but rather merely filed in an untimely fashion and, moreover, that such late filing was the result of its good faith reliance on the advice of an engineering consultant.

We believe that defendant's interpretation of section 8 is not a fair reading of that provision. Section 8 provides that penalties are to be

imposed "[s]hould the owner of any industrial plant subject to the surcharge fail to file its monthly certified statement *as herein required.* * * *" (Emphasis added.) It further states that "the penalty for failing to file a monthly certified statement shall be five percent per month of any fraction thereof, of such unpaid surcharge. Such penalty shall accrue for each month from the date any remittance was due, until paid." Section 5 of the ordinance requires that certified statements for any given month be filed on the last day of the following month. Section 7(b) requires that any surcharge due be remitted together with the monthly certified statement. When these provisions are read together it is clear that section 8 calls for the imposition of penalties where there is a failure to file in accord with the orderly periodic procedures set forth in the other sections of the ordinance.

██ Defendant in a supplemental statement of authority has cited several cases in support of its contention that if a party does not deliberately violate the provisions of a statute or ordinance, but acts in good faith, such violations should be excused. (See, *e.g., In re Fisk's Estate,* 203 F.2d 358 (6th Cir. 1953); *Girard Investment Co. v. Commissioner of Internal Revenue,* 122 F.2d 843 (3rd Cir. 1941); *Sabatini v. Commissioner of Internal Revenue,* 98 F.2d 753 (2nd Cir. 1938).) These cases are inapposite to the situation at bar. *In re Fisk's Estate* involved a provision of the tax code which expressly provided that a taxpayer could escape the imposition of penalties if he could show it was not the product of willful neglect. (See 26 U.S.C. §3612(d)(1) (1946).) *Girard Investment* and *Sabatini* dealt with instances where taxpayers filed timely but incomplete or inaccurate returns. In both cases it was held that these errors were the products of ambiguities in certain provisions in the Tax Code, that there existed a reasonable cause for any errors and therefore that the taxpayers were not liable for penalties. The ordinance before us is not ambiguous nor does it expressly make provision for a "good faith" defense to the imposition of penalties. Clearly, then, the reliance of defendant on the advice of a single engineer whom it retained does not preclude its liability for penalties and interest for failure to pay the surcharge or file its monthly certified statements for a period of almost three years.

The ordinance provides that interest at the rate of one percent per month shall be added to any overdue surcharge payments, and that the penalty which the owner of an industrial plant subject to the ordinance is required to pay for failure to file a monthly certified statement shall be five percent per month. Defendant contends that these provisions are so unreasonable and excessive as to be violative of due process of law.

There is a presumption of constitutional validity attaching to an ordinance, and the challenging party has the burden of showing the ordinance's lack of reasonableness. (*Chicago Allis*, at 327.) Defendant submits that merely pointing to the "cumulative" nature of the penalty and interest provisions, that is, the fact that they are without limit as to the time during which the penalty can accumulate and the total maximum amount of penalty which can be imposed, constitutes a showing of such manifest unreasonableness that it has met its burden. In so arguing, however, defendant has recognized the right of the plaintiff, in light of existing conditions and circumstances and the objectives to be obtained to impose reasonable penalties. (*Cf. Hawes v. City of Chicago*, 158 Ill. 653.) Moreover, defendant acknowledges the existence of authority in support of the principle that even harsh penalties may be employed to secure the collection of revenues. See *Southwestern Telegraph & Telephone Co. v. Danaher*, 238 U.S. 482, 59 L. Ed. 1419, 35 S. Ct. 886.

In the instant case the penalties prescribed by the ordinance reasonably serve the purpose of encouraging the prompt payment of the waste disposal surcharge by subject industrial concerns. The penalties imposed for violation of the ordinance are harsh, but, we believe, they are no more than others enacted by our legislature and upheld by our Supreme Court. (See *Chicago Rock Island & Pacific R.R. Co. v. People*, 217 Ill. 164, 173-174, 75 N.E. 368.) There the supreme court, although reversing a judgment against the defendant railroad due to a misapplication of the relevant statute, upheld the constitutionality of those provisions of the statute imposing severe penalties for the failure of subject railroads to file annual statements listing their taxable property.

Defendant in his supplemental statement of authority has cited cases from other jurisdictions in which cumulative penalties have been held unreasonable and invalid. We believe the cases cited by defendant are distinguishable from the one at bar. For example, in *Superior Laundry Co. v. Rose* (1923), 193 Ind. 138, 137 N.E. 761, a provision of the Indiana Weekly Wage Law requiring an employer to make wage payments at least twice a month of all wages earned up to the time of payment and imposing a penalty of ten percent of the unpaid wages for each day they remained unpaid after they became due was struck down as being "excessive and oppressive." The employer in that case was liable to its employee for penalties amounting to over four times the wages which were owed. In the instant case rather than an unreasonably severe penalty of ten percent of what is owed per day, the ordinance prescribes a penalty of five percent of the unpaid surcharge per month.

■■ For the above mentioned reasons we reject defendant's contention

that the penalty and interest provisions of the ordinances constituted a deprivation of property without due process of law.

The judgment entered below is affirmed.

Affirmed.

LORENZ, P. J., and BARRETT, J., concur.